Joe E. RICHARDSON, Appellant,

v.

**RUSSOM CRANE RENTAL COMPANY et al., Appellees.**

Court of Appeals of Tennessee, Western Section.

Jan. 28, 1975.

Certiorari Denied by Supreme Court July 21, 1975.

Thomas A. Stroud, Memphis, for appellant.

Leo Bearman, Memphis, for appellees.

NEARN, Judge.

This suit was for personal injuries. The Trial Judge directed a verdict for the defendant at the close of plaintiff's proof. The plaintiff has appealed.

Plaintiff, Joe E. Richardson, originally filed suit against Russom Crane Rental Company, Central Foundry Company, and Ray Cook Plumbing Company. Prior to trial, voluntary non-suit was taken as to defendants Central Foundry Company and Ray Cook Plumbing Company and the matter proceeded to trial against Russom Crane Rental Company with the aforesaid results.

Plaintiff was sales and office manager of Mid-South Sales Company. Among other things, Mid-South sells soil pipe as a manufacturer's representative. Plaintiff in his capacity as manager sold a load of pipe to Hollingsworth Supply Company which in turn had sold the pipe to Ray Cook Plumbing Company where it was to be unloaded. As part of the deal, plaintiff made arrangements to have the pipe brought directly to the premises of Ray Cook from the manufacturer, Central Foundry, on a Central Foundry truck and plaintiff employed or rented on an hourly basis a crane and crane operator from Russom Crane Rental Company to offload the pipe.

The pipe arrived via Central Foundry truck on the Cook premises on the morning of September 9, 1969. The Russom crane and operator were there to unload. The Central Foundry driver and a helper from Ray Cook were supposed to assist in the unloading, but decided first to have a little breakfast. Plaintiff was not pleased with the fact that Mid-South was being charged rental time on the crane for the time the Central Foundry and Ray Cook employees were enjoying their breakfast. Plaintiff instructed the Russom crane operator to proceed with the offloading. While so doing, a load of pipe slipped, fell upon plaintiff and injured him.

Plaintiff testified that the crane operator operated the machine under plaintiff's directions; that is, plaintiff controlled when, where, and for what purpose the crane was to be operated. Of course, plaintiff did not direct the crane operator in regard to the technical, physical operation of the crane, for plaintiff did not know how to operate a crane.

As to the manner in which plaintiff sustained his injuries, plaintiff testified that the several sections of pipe were packaged on the truck on pallets and that one pallet load of pipe had been set off. To facilitate unloading the pallets Mid-South, plaintiff's employer, had furnished a tool called a fork adapter. From an exhibit in the record we would describe it as a heavy metal plate with two prongs or forks affixed at each bottom corner extending outwardly at a 90° angle from the plate. From the top of the plate and center thereof there extends a single arm at a 90° angle running in the same direction as the bottom forks. An "eye" bolt is affixed to the end of the top arm so that a crane hook may be inserted. From a side linear view it would appear as a three sided box. The idea being that the bottom forks are inserted to maximum depth in the bottom of a pallet or underneath the load to be lifted; then the crane hook is inserted on the top arm and the load is lifted. In removing the second load this fork adapter became hung either in pipe or a pallet so that it was not properly aligned. The crane operator requested that plaintiff unhang it. Plaintiff proceeded to attempt to do so, but while in the process the cable line from the adapter to the crane, which had been slack, became taut and "the whole

pipe, the fork and everything just came loose and fell." In falling, the pipe struck and injured plaintiff.

We are of the opinion that the Trial Judge was right in directing a verdict in favor of the defendant Russom.

The crane operator falls in the category of a loaned servant. At the time of the injury complained of he was not acting as the agent or servant of Russom so as to make Russom answerable for his alleged negligence under the doctrine of respondeat superior.

We believe this case to be on "all fours" with the case of Gaston v. Sharpe (1943) 179 Tenn. 609, 168 S.W.2d 784. In that case it was a dragline involved instead of a crane. The proof showed that:

"It was the duty of the operator to use the machine on the project as directed by those (Richardson) supervising the work.

\* \* \* \* \* \*

"The operator furnished by Sharpe (Russom) was in charge of the dragline (crane) and its manipulation and his duty was to employ it as directed by the foreman or supervisor (Richardson) of the work.

\* \* \* \* \* \*

"It was in pursuance of an order of the foreman or supervisor (Richardson), which that party was entitled to give, that the operator did the thing that injured the plaintiff." (Parenthetical words added.)

That statement of the proof is exactly what the proof shows in this case. The crane operator was attempting to unload pipe just as he had been ordered to by Richardson. In the process of unloading, the adapter became entangled, and the attempt to disengage it was in the furtherance of Richardson's order to unload the pipe. If the operator was negligent, it was in the process of doing what he had been ordered to do.

In the Gaston case, supra, the Supreme Court quoted with approval from Restate-

ment of Agency in giving the test for determining whether or not the actor is a "loaned servant" or the agent of another. The meat of the Restatement rule is that the determination is dependent upon

" '—whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is as to whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act. \* \* \* \* ' "

There is no conflict in the testimony that the operator was engaged in the act of unloading directly ordered by Richardson.

Therefore, we conclude that the crane operator was not employed in the business of and subject to the orders of Russom as to the act in question.

It results that the judgment of the Trial Judge is affirmed with costs of appeal adjudged against appellant and surety.

Judge ANDREW T. TAYLOR, by designation of the Supreme Court of Tennessee, took part in the hearing of this appeal in the absence of Presiding Judge C. S. CARNEY.

MATHERNE, J., and TAYLOR, Special Judge, concur.