14 So.2d 363

## STATE v. FRIEDKIN.

I Div. 195.

Supreme Court of Alabama.

June 24, 1943.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris and W. W. Callahan, Asst. Attys. Gen., for appellant.

Outlaw, Seale & Kilborn, of Mobile, for appellee.

FOSTER, Justice.

This is an appeal by the State under section 370, Title 15, Code of 1940, on the theory that the judgment in the circuit court held that the Act of the Legislature under which the indictment was preferred was unconstitutional. The indictment is in six counts.

The demurrer to counts 2, 5 and 6 was sustained, and to counts 1, 3 and 4 was overruled.

Count 2 charged defendant with the practice of chiropody without a license and contrary to law. Count 5 charged the practice of chiropody without a certificate of qualification from the State Board of Medical Examiners contrary to law. Count 6 was in substance the same as count 5.

The statute which is controlling is section 259, Title 46, Code of 1940. It was so provided in an Act of September 21, 1939, amending section 2837, Code of 1923, so as to add the feature applicable to chiropody. See, General Acts 1939, page 600.

The demurrer which was sustained to counts 2, 5 and 6, supra, was to the effect that the statute on which the indictment is based, "as completed by the rules and regulations of the Board of Medical Examiners of the State of Alabama," is void as applied to defendant because it deprives him of liberty or property without due process, and denies to him the equal protection of the laws, in that it discriminates against persons not residing in Alabama, and against aliens; that the rules are legislative in part, and the power to adopt them has not been delegated to the board, and that it cannot be delegated to them to that extent.

We are told in brief for appellee and in argument at the bar that the Board of Medical Examiners passed rules and regulations on December 1, 1939, and that the Act authorizing them did not by its terms become effective until December 21, 1939, and that they contained a clause exempting from examination persons then residing in Alabama, who were bona fide citizens of the United States, "and who had reputedly engaged solely in the practice of chiropody for one year prior to the passage of the chiropody act."

We are therefore asked by appellee to affirm a judgment sustaining the demurrer on the contention (not made a ground of the demurrer) that when the rules were passed, the board had no authority to do so, or if they had such authority, they were violative of the constitutional provisions just mentioned.

The contention first made is that the board can only determine whether the ap-

plicant has the qualifications prescribed by it in regulations duly promulgated, and that there were no such rules duly promulgated; or, if so, they were void on constitutional grounds.

That question and the discriminatory claim as to the rules and regulations are dependent on the theory that the court will take judicial notice of those rules and regulations; when they were adopted; and that defendant was not a resident of Alabama, or was not a citizen of the United States. For if he were a resident of Alabama and a citizen of the United States, the regulations would not be discriminatory as to him, and he could not complain that it was so as to some other person not here involved. A person adversely affected must present such a constitutional issue in court. State v. Merrill, 218 Ala. 149(6), 117 So. 473; State ex rel. Thomas v. Gunter, 170 Ala. 165, 54 So. 283, unless it is one of great public interest, Shehane v. Bailey, 110 Ala. 308, 20 So. 359 (and then discretionary with the court), State v. St. John, ante, p. 269, 13 So.2d 161; 16 Corpus Juris Secundum, Constitutional Law, § 94, p. 215, note 62.

The power and duty of a court to take judicial notice of the rules and regulations of an administrative board has been considered in several of our cases. We have declared that our courts will not take judicial notice of the regulations of an administrative board, unless they are of such wide application and established duration as to have become a part of the common knowledge of well informed persons. Ferguson v. Starkey, 192 Ala. 471, 68 So. 348; Hill v. Cameron, 194 Ala. 376, 69 So. 636. See, Georgia Pac. Rwy. Co. v. Gaines, 88 Ala. 377, 7 So. 382.

It was held in West v. State, 242 Ala. 369, 6 So.2d 436, that when the act of the legislature expressly declares that the rules and regulations therein referred to shall have the force and effect of law, its status is as a public statute in this respect. To the same effect is Lovett v. State, 30 Ala.App. 334, 6 So.2d 437, certiorari denied 242 Ala. 356, 6 So.2d 441.

For the same and other reasons we take judicial notice of the rules and regulations promulgated by authority of an act of Congress. Lawrenceburg Roller Mills Co. v. Jones & Co., 204 Ala. 59, 85 So. 719; Adler & Co. v. Jones & Co., 208 Ala. 481, 94 So. 816. Also of proclamations and messages of the governor, Carnley v. Brunson, 227 Ala. 197, 149 So. 87; as we did of the bank moratorium, King v. Porter, 230 Ala. 112, 160 So. 101; Hamilton v. James, 231 Ala. 668, 166 So. 425; and of the President of the United States, Louisville & N. R. Co. v. Shikle, 206 Ala. 494, 90 So. 900, and of rules promulgated by the A. B. C. Board, Hardin v. State, 241 Ala. 4, 3 So.2d 89.

But not of ordinances of a city unless so expressed in legislative enactment. 9 Ala.Dig., Evidence, p. 56, ⚷31. They are local in application.

The Act of the Legislature having reference to chiropody does not declare that the rules and regulations which it authorizes shall have the force of law. But the generally accepted theory is that rules, regulations and general orders of administrative authorities pursuant to the powers delegated to them have the force and effect of laws, when they are of state-wide or national application, and so set up as that information of their nature and effect is readily available, or has become a part of common knowledge. See 20 Am.Jur. 67, § 44; 42 Am.Jur. 432 et seq., § 102.

This is not in conflict with Ferguson v. Starkey, supra, or Hill v. Cameron, supra, whose holding was based on the ground as declared, that the question had relation to certain localities said to be stock law districts (not defined by law) of which the court took no judicial knowledge. But here we are dealing with a well known board of long standing whose jurisdiction and rules have state-wide application, and are easily ascertainable. See, State ex rel. Bond v. State Board, 209 Ala. 9, 95 So. 295; Parke v. Bradley, 204 Ala. 455, 458, 86 So. 28.

We prefer to accept the principle that the rules and regulations validly adopted by the board under this Act have the force and effect of law, of which courts take judicial knowledge.

Reverting to the contention that they were adopted prior to the effective date of the Act, and therefore are without support from it, we entertain the view that if they were adopted before that date, it would not prevent them from going into effect contemporaneously with the Act. See, Hawkins v. Jefferson County, 233 Ala. 49(6), 69 So. 720. The Act was approved September 21, 1939, and became effective

December 21, 1939. The State Board of Medical Examiners was not created by it. It had its origin as set up in section 258, Title 46, Code of 1940, in the Act of April 5, 1911 (General Acts 1911, page 234). The Act of 1939, supra, put upon that board the duty to make an examination of applicants for license to practice chiropody on the specified subjects. The rules and regulations show an adoption on December 1, 1939. They recite that "as soon as this law becomes operative, anyone attempting to treat ailments of the human foot without procuring a certificate of qualification from the State Board of Medical Examiners will be in open violation of the law." Whereupon the board adopted the rules and regulations, one feature of which was to authorize "any person now residing in Alabama who is a bona fide citizen of the United States, and who has reputedly engaged solely in the practice of chiropody for one year prior to the passage of the chiropody act" to make application for a certificate without examination, within forty days.

We also think that prior to December 21, 1939, the board could have examined applicants on the subjects required under the rules and regulations adopted December 1, 1939, and have become satisfied as to their qualifications, and based on such knowledge have granted a certificate of qualification on December 21, 1939, or denied it, as their judgment dictated. The Legislature may have postponed its operation so as to enable the board to have time to do that very thing.

But it is contended that the Legislature did not authorize the board to grant a certificate of qualification, without examination, to a resident of Alabama, and deny it to a nonresident, or to an alien under similar circumstances.

In this contention we concur. We do not see in the Act any authority conferred on the board to discriminate against nonresidents and aliens, not now determining whether such a discrimination would violate the equal protection clause of the Fourteenth Amendment (see McLendon v. State, 179 Ala. 54, 60 So. 392, Ann.Cas. 1915C, 691), or the due process clause of the State and Federal Constitutions, nor whether the right to make such a regulation is matter which could have been delegated by the Legislature. That would raise serious constitutional questions which have been often discussed. See George v. Port-

land, 114 Or. 418, 235 P. 681, 39 A.L.R. 346 et seq.; 16 Corpus Juris Secundum, Constitutional Law, § 529, p. 1074, note 53; Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

The power to make rules conferred by the Chiropody Act is well within legislative competency to delegate to the board. But the board must act within the standards thus declared, and not legislate in any respect. Parke v. Bradley, supra. Nothing can be interpreted in the Act to mean that it authorizes the board to classify applicants except by the standards outlined in it. While the qualifications are to be in the judgment of the board, they are confined to such as are "for the protection of the public health, safety, and morals", and the examination is to embrace certain specific subjects.

We need not discuss the question of whether the board must require all applicants to pass an examination on those subjects. But it cannot classify applicants except in respect to the "public health, safety, and morals." Indeed, such is the plain language of the law. To classify them pursuant to their residence or citizenship cannot have relation to the public health, safety or morals, so far as we can see. We think the legislature did not make such a delegation of power, and need not discuss the question of whether it would be discriminatory or delegable.

But notwithstanding the fact that the power thus to classify was not delegated to the board, or that it had no right to do so, it does not follow that this appellee may not be guilty of a crime under section 262, Title 46, Code of 1940, of practicing chiropody without a certificate of qualification.

This demurrer (theoretically) admits that he did that very thing which is thus denounced. And nowhere does it appear that he was a nonresident or an alien, and was denied a certificate without examination on that ground. But if he was denied a certificate without examination, he does not show a right to practice because under an invalid rule others were granted a certificate, even if they should not have been. He does not show that under the statute he was entitled to a certificate without examination, or that he was entitled to it by virtue of having passed an examination. We may not add another unqualified

practitioner by virtue of a rule which is inoperative. Assuming it to be inoperative, that fact eliminates the right under the rule to grant a certificate to anyone without an examination and his only right to practice is a certificate of qualification issued after examination. We cannot add to the rule which exempts certain residents, by making the exemption apply likewise to nonresidents and aliens, contrary to its terms, because the rule itself is unauthorized, or otherwise invalid, when it is thus limited in its operation. Such is the reasoning in Giles v. Harris, 189 U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909.

Moreover, the question here is not whether he ought to have a certificate of qualification, but whether he has one as required by sections 259, 262, Title 46, supra. The law is valid and it is not under attack. The rules and regulations relate not only to the qualifications based on residence or citizenship. There are ample rules without the clause under attack to support an examination required by section 259, supra. Moreover, that section is self operating without any rules and regulations, to justify a certificate of qualification after an examination. Different in that respect from State v. Curran, 220 Ala. 4, 124 So. 909; Id., 23 Ala.App. 275, 124 So. 911.

If the exemption from examination is void because of the reasons we have discussed, then those licensed under it without examination may be subject to be ousted from the practice by proper proceedings directly attacking the validity of his certificate of qualification, or seeking to cancel it, but it does not serve to admit others to practice unlawfully, thereby enlarging the number of unqualified practitioners.

We do not think the Act of the Legislature under which the indictment was preferred is unconstitutional, even when considered in the light of the rules and regulations of the board, one feature of which may be inoperative; and think that the demurrer to it on that ground should not have been sustained.

Reversed and remanded.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.