182 N.J. Super. 252 (1981)
440 A.2d 476
NEW JERSEY ASSOCIATION OF HEALTH CARE FACILITIES, A CORPORATION NOT FOR PROFIT OF THE STATE OF NEW JERSEY, APPELLANT,
v.
ANN KLEIN, COMMISSIONER OF HUMAN SERVICES, AND THE NEW JERSEY DEPARTMENT OF HUMAN SERVICES, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 17, 1981.
Decided December 15, 1981.
*254 Before Judges MICHELS, McELROY and J.H. COLEMAN.
Jonathan D. Weiner, attorney for appellant New Jersey Association of Health Care Facilities.
James R. Zazzali, Attorney General of New Jersey, attorney for respondent Ann Klein, Commissioner of Human Services, and the New Jersey Department of Human Services (John J. Degnan, former Attorney General of New Jersey; Erminie L. Conley, Assistant Attorney General, of counsel; Barbara A. Harned, Deputy Attorney General, on the brief).
Goldie A. Colonna, attorney for amicus curiae, John J. Fay, Jr., Ombudsman for the Institutionalized Elderly (Sharon B. Ransavage, on the brief).
David Lazarus, attorney for amicus curiae, Community Mental Health Law Project (David Lazarus and Gary D. Gordon, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
This appeal challenges the validity of the Personal Needs Allowance regulations (N.J.A.C. 10:123-3.1 et seq.), promulgated by the Department of Human Services to implement the "Rooming and Boarding House Act of 1979" (Act) (L. 1979, c. 496); N.J.S.A. 55:13B-1 et seq. N.J.A.C. 10:123-3.2 of the regulations, which became effective on August 27, 1980, provides:
The owner or operator of each residential health care facility or boarding house shall reserve to each Supplemental Security Income recipient residing therein a personal needs allowance in an amount of at least $40 until such time as this rule may be amended. No owner or operator or agent thereof shall interfere with the recipient's retention, use, or control of the personal needs allowance.[1]
*255 The act pursuant to which the regulations under review were promulgated was signed by the Governor on February 29, 1980, to take effect 180 days after its enactment, to wit. August 27, 1980. The effective date of the act was made 180 days after it was enacted for the express purpose of "allow[ing] the departments (particularly the Department of Community Affairs) time to prepare for implementation." Senate Bill 3111, § 39. As part of a comprehensive attempt to revamp the supervision and regulation of the segment of the housing industry dealing with residential health care facilities, our Legislature also amended the powers and duties of the Commissioner of Human Services (Commissioner), who is charged with administering the Supplemental Social Security Income Program (SSI) established pursuant to Title XVI of the Social Security Act, 42 U.S.C.A. §§ 1381-1383c. See N.J.S.A. 44:7-85 et seq. N.J.S.A. 44:7-87(h) of the new Supplementary Assistance Statute gives the Commissioner the authority to:
h. Ensure that any eligible person residing in a rooming or boarding house or residential health care facility has reserved to him a monthly amount, from payment received under the provisions of the act to which this act is a supplement or from any other income, as a personal needs allowance. The personal needs allowance may vary according to the type of facility in which an eligible person resides, but in no case shall be less than $25.00 per month.
By a letter dated June 24, 1980 the owners and operators of facilities accommodating individuals under the SSI Program were informed by the Commissioner that commencing in July 1980 the recommended Personal Needs Allowance (PNA) for each of their residents should be increased from $30 to $40 a month. In that same letter the owners and operators were informed of the new statutory authority granted the Commissioner to enforce compliance with the "recommended" PNA level.
When the Commissioner received information that some of the owners and operators had refused to increase the PNA level, she submitted the regulations in question to the Division of Administrative Procedure on August 6, 1980 on an emergency *256 basis, thereby obviating the notice requirements of N.J.S.A. 52:14B-4. The Commissioner submitted the regulations with a proposed effective date of August 27, 1980, the same effective date as the law granting her the authority to promulgate such rules.
As required by the emergency rules adoption procedure under N.J.S.A. 52:14B-4 and N.J.A.C. 15:15-4.18 and 4.19, the Commissioner explained in writing her reasons for requesting the expedited adoption of the proposed rules, in part, stating:
I am submitting them for adoption on an emergency basis due to the need to protect the health and welfare of a very vulnerable population potentially at risk if the rule is not adopted immediately.
In June, we notified owners and operators of residential health care facilities that pursuant to the authority given me under P.L. 1979, c. 496, The Rooming and Boarding House Act of 1979, the personal needs allowance for SSI recipients would be increased from $30 to $40 per month (see enclosed letter). We also notified the county welfare agencies, and, through them, the residents. Since then, we have been informed that some operators are refusing to comply with our directive and will not give the residents their PNA. One reason they cite for refusing to comply, is that a notice was not published in the New Jersey Register. Thus, we are in a situation where aged and disabled residents are requesting the funds due them, but operators may be refusing their requests; this potentially conflictual situation may present some real danger for a group very much at risk.
In order to diffuse at least one major aspect of the dispute, we propose to adopt this rule on an emergency basis, removing the one objection of notice. The effective date of the rule coincides with the effective date of the law.
These emergency rules were adopted in final form on August 27, 1980 and published in the New Jersey Register on September 4, 1980. 12 N.J.R. 536(e). Thereafter the New Jersey Association of Health Care Facilities appealed, contending that the regulations were invalid because (1) the Commissioner did not have the statutory authority to submit the regulations for adoption prior to the effective date of the enabling legislation and (2) they were adopted without notice and hearing, as required by the provisions of the Administrative Procedure Act, specifically, N.J.S.A. 52:14B-4.
*257 The standards of judicial review of regulations promulgated by an administrative agency are thoroughly discussed and clearly stated in New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 560-563 (1978). Application of those principles to appellant's challenge to the PNA regulations, N.J.A.C. 10:123-3.1 et seq., compels the conclusion that the regulations do not exceed the scope of the broad delegation of power to the Department of Human Services and its Commissioner under N.J.S.A. 55:13B-1 et seq. and N.J.S.A. 44:7-85 et seq., and that they are not arbitrary, capricious or unreasonable. The legislative findings and declarations, on the basis of which the Commissioner was granted the authority to pass the regulations under review, expressly state that this was a remedial bill designed primarily to provide for the health, safety and welfare of those predominately elderly, disabled and poor who reside in rooming and boarding houses or residential health care facilities in this State. See N.J.S.A. 55:13B-2. Furthermore, N.J.S.A. 44:7-87(h) requires that the Commissioner insure that eligible persons receive a minimum PNA after August 27, 1980. This would be impossible if the Commissioner were unable to submit regulations to implement the act until or after that date. In the circumstances, we hold to the view that the Commissioner, at the very least, had the implied authority to propose regulations which would become effective concurrently with the Act.
The result we reach here is supported by State v. Friedkin, 244 Ala. 494, 14 So.2d 363 (1943) wherein the Alabama Supreme Court, addressing the issue before this court, upheld that the validity of a regulation adopted prior to the effective date of the enabling legislation authorizing an agency to promulgate the regulations, in part stating:
Reverting to the contention that they were adopted prior to the effective date of the Act, and therefore are without support from it, we entertain the view that if they were adopted before that date, it would not prevent them from going into effect contemporaneously with the Act. See, Hawkins v. Jefferson County, 233 Ala. 49(6), 69 S[o]. 720. The Act was approved September 21, 1939, and *258 became effective December 21, 1939. The State Board of Medical Examiners was not created by it. It had its origin as set up in section 258, Title 46, Code of 1940, in the Act of April 5, 1911 (General Acts 1911, page 234). The Act of 1939, supra, put upon that board the duty to make an examination of applicants for license to practice chiropody on the specified subjects. The rules and regulations show an adoption on December 1, 1939. They recite that "as soon as this law becomes operative, anyone attempting to treat ailments of the human foot without procuring a certificate of qualifications from the State Board of Medical Examiners will be in open violation of the law." Whereupon the board adopted the rules and regulations, one feature of which was to authorize "any person now residing in Alabama who is a bona fide citizen of the United States, and who has reputedly engaged solely in the practice of chiropody for one year prior to the passage of the chiropody act" to make application for a certificate without examination, within forty days.
We also think that prior to December 21, 1939, the board could have examined applicants on the subjects required under the rules and regulations adopted December 1, 1939, and have become satisfied as to their qualifications, and based on such knowledge have granted a certificate of qualification on December 21, 1939, or denied it, as their judgment dictated. The Legislature may have postponed its operation so as to enable the board to have time to do that very thing. [14 So.2d at 366]
However, we do agree with appellant that the Commissioner should have given notice to the public and afforded those interested an opportunity to be heard in accordance with rules set forth in N.J.S.A. 52:14B-4 and N.J.A.C. 15:15-4.1 et seq. Rather than declaring the regulations invalid, we have chosen to exercise our discretionary power in the interest of justice and remand these administrative regulations for further proceedings by the Commission in accordance with the provisions of N.J.A.C. 15:15-4.20, which provide for the ratification of emergency rules and regulations. See Wilson v. Mountainside, 42 N.J. 426, 442 (1964).
Accordingly, we uphold the Commissioner's authority to promulgate the regulations under review and remand the matter with direction that the Commissioner give the public notice and an opportunity to be heard pursuant to the provisions of N.J.A.C. 15:15-4.20. We do not retain jurisdiction.
NOTES
[1] While this appeal was pending the Department of Human Services adopted an amendment to the Personal Needs Allowance regulations. N.J.A.C. 10:123-3.1 and 3.2, increasing the mandatory PNA level from $40 to $44 a month. See 13 N.J.R. 595(a). This amendment is not challenged on this appeal.